## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DERRICK NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02680-TWP-TAB |
| | ) | |
| INGREDION INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND MOTION TO STRIKE PLAINTIFF'S SURREPLY

This matter is before the Court on Defendant Ingredion Incorporated's ("Ingredion") Motion for Summary Judgment (Filing No. 44) and Motion to Strike Plaintiff's Surreply to Defendant's Motion for Summary Judgment ("Motion to Strike") (Filing No. 56). Plaintiff Derrick Nelson ("Nelson") initiated this action after he resigned from Ingredion, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Fair Labor Standards Act ("FLSA"). Ingredion has moved for summary judgment on all of Nelson's claims. For the following reasons, the Court **grants** Ingredion's Motion to Strike and **grants in part** and **denies in part** Ingredion's Motion for Summary Judgment.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Nelson as the non-movant. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.**    <u>**Nelson's Employment at Ingredion and Disability**</u>

In February 2017, Ingredion hired Nelson to work at its manufacturing facility in Indianapolis ([Filing No. 45 at 10](#)). Nelson underwent surgery in 2018, which left him with vertigo, lost feeling in his face, and an inability to stand for long periods of time ([Filing No. 50 at 2](#)). He was prescribed medicine for these side effects, but the medicine would sometimes leave Nelson incapacitated for hours. *Id.* Nelson was first approved for FMLA leave in March 2018 due to his health condition; and later approved for intermittent FMLA leave in spring and fall 2018, spring and fall 2019, spring 2020 through April 1, 2021, and March 13 to May 12, 2021. ([Filing No. 45 at 13](#)).

**B.**    <u>**Ingredion's FMLA Policy**</u>

When an Ingredion employee expresses interest in or potential eligibility for FMLA, the employee attends a meeting with the Human Resources department ('HR'), and HR provides the employee with a copy of the FMLA policy and the FMLA certification packet (the "FMLA Packet") (*Id.* at 11; [Filing No. 50 at 2](#)). The FMLA Packet explains the applicable timelines and guidelines for requesting FMLA leave and includes a medical certification that must be completed by the employee's doctor. Once the employee submits the medical certification to HR, Ingredion's nurse practitioner determines the employee's eligibility and parameters for FMLA coverage ([Filing No. 45 at 12](#); [Filing No. 50 at 2](#)). An employee cannot apply for FMLA leave without the FMLA Packet, and the FMLA Packet is available only from Ingredion's local HR ([Filing No. 50 at 2](#)).

**C.**    <u>**Ingredion's Attendance Policy and Nelson's October 2020 Suspension**</u>

Under Ingredion's attendance policy, employees accrue points when they are absent or late: 1.5 points for no call/no shows; 1 point for absences; and 0.5 points for late arrivals/early departures. Employees are permitted to accumulate six points per year. Progressive discipline

begins at seven points, and employees who accrue ten points in a year are subject to termination (Filing No. 45 at 12).

In October 2020, HR determined that Nelson had accumulated enough attendance points to warrant a suspension. *Id.* at 13. HR presented Nelson with documentation of the attendance points and notified him that he was being suspended (the "October 2020 Suspension"). Nelson objected to the suspension because some of his absences were related to his FMLA leave. *Id.* at 14. Ingredion later investigated Nelson's absences and concluded that some of Nelson's FMLA-approved leaves of absences had been erroneously recorded as regular absences. *Id.* The parties dispute whether this error was caused by Nelson's incorrect use of Ingredion's call-out procedures, but the reason for the error is immaterial on summary judgment (*Id.*; Filing No. 50 at 5–6). Ingredion corrected Nelson's attendance points, returned him to work, and paid him for the time he was suspended (Filing No. 45 at 14).

**D.      Alleged Harassment in December 2020**

In 2020, District Manager Adam Bradford ("Bradford") became the Indianapolis plant manager (Filing No. 50 at 2). In December 2020, Nelson reported to HR Manager Josh Jones ("Jones") that Bradford was intimidating, threatening, and harassing him by noting purported rule violations (Filing No. 14 at 45; Filing No. 50 at 4)[1]. Ingredion investigated Nelson's complaints. The investigation substantiated only Nelson's rule violations, and on January 12, 2021, Nelson received a verbal reprimand regarding the rule violations (Filing No. 45 at 14–15).

**E.      Nelson's May 2021 Request for FMLA Packet and Suspension**

Nelson took FMLA leave again from March 13, 2021, to May 12, 2021 ("March 2021 FMLA leave") (Filing No. 45 at 15; Filing No. 50 at 2). On May 13, 2021, Nelson attended a

---

[1] The parties dispute how many times Nelson complained to HR about Bradford, but that detail is immaterial (Filing No. 54 at 8).

meeting with HR to discuss his employment status (Filing No. 46-1). During the meeting, Nelson requested additional intermittent FMLA leave, but HR Representative Adia Ahmed ("Ahmed") told Nelson he had not worked enough hours to be approved for FMLA leave, and she refused to give Nelson an FMLA Packet (Filing No. 51-4 at ¶ 14). When Nelson asked Jones about his FMLA leave, Jones told him that he did not qualify, refused to give Nelson an FMLA Packet, and told Nelson he was being suspended (Filing No. 50 at 3; Filing No. 46-2 at 27). Nelson stated that the recorded absences were related to his FMLA leave and should have been excused, but he was suspended from May 13 to June 27, 2021, without pay (the "May 2021 Suspension") (Filing No. 50 at 3; Filing No. 51-1 at ¶¶ 14, 16).

**F.    Nelson's Return to Work and Resignation**

Later, based on documents provided by Nelson, Ingredion confirmed that Nelson was in fact eligible for FMLA leave. On June 30, 2021, Ingredion gave Nelson a FMLA Packet, which was due July 15, 2021 (Filing No. 45 at 16; Filing No. 50 at 5). Nelson returned to work on or about July 6, 2021,[2] and was harassed upon his return (Filing No. 50 at 4; Filing No. 51-4 at ¶ 19). He complained to HR that Bradford was intimidating and threatening him, questioning him regarding his FMLA and threatening to fire him. *Id*. Despite returning an incomplete FMLA Packet on July 27, 2021, Ingredion accepted the Nelson's Packet. (Filing No. 45 at 16). On August 3, 2021, HR notified Nelson that he needed to provide additional information by August 11, 2021. During that time, Nelson's "responses to HR were increasingly sporadic and inconsistent." *Id*. At one point, HR deactivated Nelson's access card to force him to come to the HR office to discuss the missing information. *Id*.

---

[2] Nelson's Affidavit appears to have erroneously stated he returned to work on or about "June 6, 2021," instead of July 6, 2021. The parties' briefs confirm Nelson returned to work in July 2021 (Filing No. 45 at 15; Filing No. 50 at 4).

On August 13, 2021, Nelson returned the FMLA Packet, which Ingredion again accepted despite its tardiness. *Id.* Nelson's submission was sufficient to approve his March 2021 FMLA leave, and Ingredion retroactively approved that leave. However, Ingredion was still missing information about Nelson's other absences and authorization for intermittent FMLA leave. *Id.*

Based on Nelson's July and August 2021 medical documentation, and Nelson's reported episodes of vertigo, Ingredion began questioning whether he could safely continue working in his position. *Id.* HR scheduled a meeting with Nelson for August 26, 2021, to discuss those questions. Nelson did not come to work that day and called in his absence as FMLA-qualifying. *Id.* at 17. Nelson was also absent from work on August 27, 28, and 29, 2021. *Id.* On August 30, 2021, Nelson resigned from Ingredion, effective immediately. *Id.* Nelson's FMLA recertification was pending when he resigned. *Id.* at 13.

**G.**    **Procedural History**

On January 12, 2021, Nelson filed a charge of discrimination with the EEOC, alleging race and disability discrimination related to his October 2020 Suspension (Filing No. 45 at 9; Filing No. 50 at 4). He received a Notice of Right to Sue as to those claims on July 23, 2021 (Filing No. 45 at 9). He initiated this action on October 19, 2021 (Filing No. 1). On February 14, 2022, Nelson filed a second charge of discrimination with the EEOC ("2022 Charge") and received a Notice of Right to Sue on June 15, 2022. *Id.* at 10.

On August 5, 2022, Nelson filed an Amended Complaint (Filing No. 32), which is the operative pleading. Ingredion moved for summary judgment on April 26, 2023 (Filing No. 44). Between April and June 2023, the parties filed their opening, response, and reply briefs (Filing No. 45; Filing No. 50; Filing No. 54).  Thereafter, Nelson filed a Surreply Brief in Opposition to Defendant's Motion for Summary Judgment and Ingredion asks the Court to strike the Surreply (Filing No. 56).

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).

Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted)."[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.    DISCUSSION

Nelson's Amended Complaint alleges that Ingredion discriminated against him on the basis of his race and disability, retaliated against him, interfered with his FMLA rights, and in violation of the FLSA failed to pay him for hours that he had worked. Ingredion moves for summary judgment on all of Nelson's claims arguing that Nelson cannot show that his October 2020 Suspension or his August 2021 resignation was discriminatory or retaliatory. Ingredion also denies that it interfered with Nelson's FMLA rights, or that it failed to pay him any wages to which he was entitled. In his response, Nelson waives his race discrimination claims and does not respond to many of Ingredion's other arguments. Nelson also filed a Surreply, which Ingredion moves to strike. The Court will first resolve Ingredion's Motion to Strike Plaintiff's Surreply before addressing the summary judgment motion.

### A.    Motion to Strike Surreply

Local Rule 56-1(d) allows a party opposing summary judgment to file a surreply brief "only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." S.D. Ind. L.R. 56-1(d). The "purpose for having a motion, response, and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, No. 09-cv-340, 2010 WL 1258052 (S.D. Ind. Mar. 25, 2010). "New arguments and evidence may not be raised for the first time in a reply brief. Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." *Reis v. Robbins*, No. 14-cv-63, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015) (citations omitted). "Courts allow a surreply brief only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the

evidence cited in the response." *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils.*, 410 F. Supp. 3d 943, 949 (S.D. Ind. 2019).

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored; however, "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

In his Surreply, Nelson argues that "Defendant has objected to the admissibility of Plaintiff's evidence," so "Plaintiff has a right to respond to Defendant's request in light of the new evidence" (Filing No. 55 at 1). Ingredion first contends that the Surreply is improper because Nelson did not obtain leave to file it (Filing No. 56 at 3). However, the Local Rules do not require a party to seek leave to timely file a surreply. *See Nissan v. Nissan N. Am.*, No. 18-cv-00075, 2021 WL 679110, at *3 (S.D. Ind. Feb. 22, 2021) (striking a surreply untimely filed eleven days after reply without leave of Court). Ingredion also contends that its reply neither objected to the admissibility of Nelson's evidence nor offered new evidence, so a surreply is inappropriate (Filing No. 56 at 1–2). On this point, the Court agrees with Ingredion.

Ingredion's reply brief asserts two arguments that Nelson seeks to rebut on Surreply: Nelson should not be permitted to raise certain FMLA claims for the first time in his response brief; and Nelson's affidavit should be given no weight (Filing No. 54 at 2–5, 10–12). But neither argument challenges the admissibility of Nelson's evidence (though they do challenge the weight of the evidence), and neither argument relies on new evidence. They simply rebut the arguments and evidence cited in Nelson's response. For that reason, Ingredion's Motion to Strike is **granted**

and his  Surreply is **stricken**. The Court will not consider the Surreply in ruling on the summary judgment motion.

**B.**    <u>**Title VII and Section 1981 Claims**</u>

In his response brief, Nelson "waives his race claims pursuant to Title VII of the Civil Rights Act and Section 1981" (Filing No. 50 at 1). Accordingly, summary judgment is **granted** as to Nelson's Title VII and Section 1981 claims.

**C.**    <u>**FMLA Claims**</u>

Nelson asserts interference and retaliation claims under the FMLA. The FMLA prohibits employers from interfering with or retaliating against an employee's use of or attempt to exercise his right to FMLA leave. *See Goelzer v. Sheboygan Cnty.*, 604 F.3d 987, 995 (7th Cir. 2010); *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008). To support an FMLA interference claim, a plaintiff must show: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 635–36 (7th Cir. 2009). To establish a *prima facie* case of retaliation under either the ADA or FMLA, a plaintiff must show: (1) he engaged in statutorily protected activity; (2) his employer took an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Dickerson v. Bd. of Trs. of Cmty. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011); *Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018).

Ingredion argues Nelson cannot sustain his FMLA claims because Nelson's October 2020 Suspension and August 2021 resignation were not "adverse employment actions," because he cannot show a causal connection between his protected status or activity and his October 2020 Suspension or August 2021 resignation; and because Ingredion ultimately did not deny Nelson's

March 2021 FMLA leave (Filing No. 45 at 20–39). Nelson does not dispute Ingredion's arguments as to his October 2020 Suspension, March 2021 FMLA leave, or August 2021 resignation. Instead, he asserts that his FMLA claims arise from the events of May 2021 (Filing No. 50 at 8–12). Specifically, Nelson argues Ingredion interfered with his right to FMLA leave in May 2021 by denying him leave, withholding the FMLA Packet, and suspending him. Nelson also contends that his May 2021 Suspension was retaliation for his May 2021 request for FMLA leave. *Id.* at 11. Though Nelson also argues that his May 2021 Suspension and resignation were both "adverse employment actions" for purposes of his FMLA retaliation claim, he only asserts a causal connection between his protected activity and his May 2021 Suspension, not his resignation. *Id.* at 11–12.

On reply, Ingredion contends that Nelson is attempting to raise new FMLA claims for the first time in his response brief, and the Court should disregard those claims (Filing No. 54 at 2–6). The Court will discuss whether it should consider Nelson's new arguments and then discuss whether Nelson's FMLA claims survive summary judgment.

### 1. Whether FMLA Arguments Related to Events of May 2021 Should Be Considered

The Seventh Circuit has established a framework for deciding whether to consider new arguments raised in opposition to summary judgment:

> [T]he correct first step is to consider whether [the new argument] changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far. In the former situation, the plaintiff may be attempting in effect to amend its complaint, and the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims. In the latter, the court should consider the consequences of allowing the plaintiff's new theory. If it would, for example, 'cause unreasonable delay,' or make it 'more costly or difficult' to defend the suit, 'the district court can and should hold the plaintiff to his original theory.'

*Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (internal citations omitted) (quoting *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)); *see Schmees*

*v. HC1.COM, Inc.*, -- F.4th --, 2023 WL 5028935, at *3 (7th Cir. Aug. 8, 2023) (confirming that district courts have discretion to construe new claims as motions for leave to amend but noting that new legal theories, as compared to new claims, are generally permissible on summary judgment) (abrogating *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).

At step one, the Court concludes that Nelson is not changing the factual theory in his Amended Complaint or raising new claims; he is only changing his legal theories. The Amended Complaint alleges "[i]n May 2021, Plaintiff requested the necessary documentation to request FMLA leave. Defendant refused to give Plaintiff the FMLA Packet. Plaintiff was not given any FMLA paperwork until July 2021. In July 2021, Plaintiff returned to work" (Filing No. 32 at ¶¶ 19–32). These allegations, though not detailed, are consistent with the legal theories asserted in Nelson's summary judgment response, and they sufficiently indicated that Nelson believed Ingredion violated the FMLA by denying Nelson an FMLA Packet, which Nelson needed to take FMLA leave and which contained Ingredion's FMLA notices, and by suspending him in May 2021. *See Prayitno v. Nextep Funding LLC*, No. 17 C 4310, 2020 WL 3414955, at *5 (N.D. Ill. June 22, 2020) (finding that new argument "at most . . . elaborates on a 'factual basis' for the claim that was always in the Third Amended Complaint, and elaborating on the complaint is exactly what plaintiffs are supposed to do in discovery); *Carrasco v. Huntington Nat'l Bank*, No. 11-cv-01063, 2013 WL 587375, at *10 (S.D. Ind. Feb. 13, 2013) ("Because [the plaintiff] originally claimed that Huntington interfered with her FMLA rights by terminating her, and the regulations include discrimination and retaliation within the definition of interference, the Court will construe the retaliation argument in [the plaintiff's] response brief as an interference claim as opposed to finding that she improperly attempted to assert a new claim for retaliation in her response brief."); *see also* (Filing No. 45 at 12 (summarizing notices and information contained in FMLA Packet)). Nelson's

new theories under FMLA do not appear to be an attempt to amend the factual allegations in the Amended Complaint, so the Court proceeds to step two of its analysis.

At step two, the Court considers the consequences of allowing Nelson to assert his new theories. In its reply, Ingredion argues that Nelson had not previously raised these FMLA claims and any alleged harm resulting from the May 2021 Suspension "was never the subject of discovery" (Filing No. 54 at 4–5). If this were true, then Nelson's new theories might unreasonably delay this case or make it more difficult for Ingredion to defend against Nelson's claims. However, the designated evidence shows that this theory *was* the subject of discovery. During Nelson's April 6, 2023 deposition, counsel for Ingredion and Nelson spoke about this theory at length:

> Q.  With respect to the FMLA, did anyone ever say anything to you that you found to discourage you from putting in for FMLA?
>
> A.  Well, they kept telling me, when I asked them to go get hours to get my FMLA, they told me that I didn't have enough hours and they told me that I wasn't qualified and they refused to give me paperwork. And I told them I needed the paperwork because my doctor had signed—had to sign the paperwork so I can come back to work. And they told me that they would be terminating me pending—they would be suspending me pending termination. And I explained to them that I needed that paperwork because that's how I keep my employment. And he said there's nothing I can do, it's out of my hands.
>
> Q.  Who said that?
>
> A.  Josh [Jones]. And I asked him on several other occasions that, with the paperwork. And I let my union steward know, Crystal Hubble, that they refused to give me paperwork so I can do my FMLA. And that's when she told me they're still mad because they're trying to find a way to get rid of you, so you just make sure you keep your PPE on because they're looking for something to get rid of you.
>
> Q.  So with respect to the refusal to give you the FMLA paperwork because you didn't have enough hours, isn't it true that there came a point in time where they—where Ingredion realized that your hours had been calculated incorrectly?
>
> A.  I won't say that because they knew it was incorrectly [*sic*]. I told them they was incorrect [*sic*]. And I tried to show them evidence and they refused.

And I told them, you know. I just came back from a stressful situation, you know, from harassment and just everything else. ***And they just made everything that much worser [sic]. So I was off work for—I don't know how long I was off work. You know, so it just messed my family up financially and just emotionally. We just—there was no income in the house. So I assumed the FMLA paperwork was for the type of situation I was in. And they just made it just that much worser*** [*sic*]. So that's—I thought I knew for a fact that my FMLA should've been renewed. And I knew it wasn't going to be renewed because I knew what they were doing by this point.

* * *

Q.      And why do you think that you were refused the FMLA paperwork?

A.      Because they knew—they wanted to terminate me.

Q.      Why did they want to terminate you?

A.      Because they knew I had retained counsel.

* * *

Q.      Let's turn to Exhibit T[3]. . . . Can you tell me what this is?

A.      Me talking to my union steward.

Q.      And what's the issue?

A.      This is the time when they had terminated me pending—pending—they suspended me pending termination.

Q.      And what were you being suspended for?

A.      They said that I had too many—too many points and they told me that they were firing me because of my points.

Q.      And what were you talking about with your union representative? And that was Crystal?

A.      Yes.

Q.      And what were you and Crystal talking about?

A.      How they were doing me—how they were stopping me from getting my paperwork when I asked for it. And basically just venting to her, letting them know that they were stopping me from getting my paperwork so I can

---

[3] Ingredion did not designate or file deposition Exhibit T.

come back to work. Because Josh knew that if they gave me my paperwork, that they would have to let me come back to work. So he did not want to give me my paperwork. And I was letting her know that.

Q.      And this is paperwork, your FMLA packet?

A.      Yes, the one he refused to give me.

Q.      That was the first one that we talked about; is that correct?

A.      I don't know about the first one. This is the last one when I was trying to get FMLA and I asked for the paperwork and he refused to give me paperwork.

Q.      Do we know about when this happened?

A.      June, I assume around June because they—I didn't come back. I was off work for almost like a month or two I believe.

Q.      What year was this?

A.      2021 I believe or 2020. That last year—that last year I was working for them.

Q.      And at the top—this is a text message, correct?

A.      Yeah.

Q.      It says, just got back in the states I just seen your messages Crystal. . . .

* * *

Q.      Quote, I need to talk to my attorney first. They must need me to come back so they can fire me right away. ***They retaliated against me cause I asked for the FMLA paperwork. So they knowingly lied about my hours and said I didn't qualify and refused to give me FMLA paperwork. It's against the law to deny me FMLA paperwork from a covered employer to interfere with my FMLA rights*** [end quote].

So I'm just trying to get the timing of this because when we spoke earlier—when you testified earlier, you had told me about the fact that the first time they didn't want to give you the FMLA paperwork because you didn't—they claimed you didn't have enough hours.

A.      This is the same—this is the same incident.

(Filing No. 46-2 at 27–30, 67–70 (emphasis added)).

14

Based on the above exchange, Ingredion learned of the FMLA theories at issue, at the latest, nearly three weeks before moving for summary judgment. Following Nelson's deposition, Ingredion did not request additional extensions of the parties' discovery or dispositive motions deadlines, despite the Court's prior willingness to grant such extensions (Filing No. 30; Filing No. 39; Filing No. 41; Filing No. 43). Instead, Ingredion moved forward with summary judgment.

Moreover, Ingredion has not offered any evidence, like written discovery responses or other correspondence, showing that Nelson expressly limited his FMLA claims to theories based on his October 2020 Suspension and August 2021 resignation. Nelson's Statement of Claims might have defined the scope of his FMLA claims, but both Nelson and Ingredion failed to timely file their Statement of Claims or Defenses, and neither party raised that failure with the Court (Filing No. 39 at 1 (setting February 22, 2023 deadline)).

Ingredion had ample opportunity to refine and clarify Nelson's claims and theories during discovery, and Ingredion in fact discussed Nelson's "new" FMLA theories during Nelson's deposition. Ingredion will not face any unreasonable or unfair difficultly in defending against Nelson's claims, and these new theories will not unreasonably delay this case, which is quickly approaching trial. The Court therefore declines to disregard Nelson's FMLA theories.

**2.** **Whether FMLA Claims Arising from Events of May 2021 Survive Summary Judgment**

Having decided that it will consider Nelson's FMLA theories related to the events of May 2021, the Court now considers whether those FMLA claims survive summary judgment. In its reply, Ingredion relies solely on the argument that Nelson's FMLA claims arising from his May 2021 request for FMLA leave, request for an FMLA Packet, and suspension were inappropriately raised for the first time on summary judgment. Ingredion offers no argument as to the merits of those claims and therefore has not satisfied its burden as the movant on summary judgment. *See*

*Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016); *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011) ("The nonmovant is not required to present evidence on an issue not raised by the movant."). Accordingly, summary judgment is **denied** as to Nelson's FMLA interference and retaliation claims related to his May 2021 request for FMLA leave, his request for an FMLA Packet, and his May 2021 Suspension.

### 3.   Remaining FMLA Claims

Ingredion has offered plentiful evidence and authority showing that Nelson's October 2020 Suspension, March 2021 FMLA leave, and August 2021 resignation did not constitute interference or retaliation under the FMLA (Filing No. 45 at 29–38, 40–43). Nelson does not dispute any of these arguments in his response. It is well established that when a party fails to respond to an issue raised in a summary judgment motion or fails to raise his claim in the response brief, the issue or claim is deemed abandoned or waived. *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003); *Laborers' Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999); *see also United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments . . . are waived."). Summary judgment is therefore **granted** as to Nelson's FMLA claims related to the October 2020 Suspension, March 2021 FMLA leave, and August 2021 resignation.

### D.   ADA Claims

Nelson alleges that Ingredion discriminated against him on the basis of his disability and retaliated against him for engaging in protected activity under the ADA. The ADA prohibits employers from discriminating against a qualified individual with a disability on the basis of that disability, and from retaliating against employees who assert their rights under the ADA. 42 U.S.C. §§ 12112(a), 12203(a); *Dickerson*, 657 F.3d at 601; *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). To support an ADA claim for discrimination, a plaintiff must show "(1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential

functions of his job either with or without reasonable accommodation, and (3) he suffered from an adverse employment decision because of his disability." *Pugh v. City of Attica*, 259 F.3d 619, 626 (7th Cir. 2001). An ADA retaliation claim requires that a plaintiff show: (1) he engaged in statutorily protected activity; (2) his employer took an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Dickerson*, 657 F.3d at 601; *Freelain*, 888 F.3d at 901.

Ingredion argues that Nelson cannot establish a *prima facie* case of discrimination or retaliation under the ADA because Nelson's October 2020 Suspension and August 2021 resignation were not "adverse employment actions," and because he cannot show a causal connection between his protected status or activity and his October 2020 Suspension or resignation (Filing No. 45 at 20–39). Ingredion supports its arguments with thorough and persuasive analysis and ample citations to authority and designated evidence.

The Court need not delve into the details of Ingredion's arguments, though, because Nelson does not respond to them. In his response brief, Nelson first asserts he was a qualified individual with a disability who could perform the essential functions of his job with or without accommodation; Ingredion does not contest those elements of Nelson's ADA claims. Nelson then recites the relevant legal standards and asserts: "Defendant's discriminatory statements and conduct prove that Mr. Nelson was constructively discharged due to his disability and in retaliation for requesting FMLA and there is no question that had Defendant fulfilled its FMLA and ADA obligations Mr. Nelson would have remained employed" (Filing No. 50 at 13). Nelson's provides no independent analysis and cites no supporting authority or designated evidence to support his ADA claim. His conclusory and undeveloped response is not enough to withstand summary judgment on his ADA claims. *See Sink*, 900 F. Supp. at 1072 ("The opposing party cannot meet

this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence."). It is well established under Seventh Circuit law that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Nelson has waived his response to Ingredion's arguments as to his ADA discrimination and retaliation claims, and Ingredion is entitled to summary judgment on those claims.

Further, although Ingredion's Motion for Summary Judgment does not address any ADA retaliation claim arising from the events of May 2021, any such retaliation claim would be barred because Nelson did not include it in his 2022 EEOC Charge (Filing No. 54 at 4). "An ADA plaintiff must file a charge with the EEOC before bringing a court action against an employer." *Whitaker v. Milwaukee Cnty.*, 772 F/3d 802, 812 (7th Cir. 2014) (citing 42 U.S.C. § 12117(a)). "[A] plaintiff is barred from raising a claim in the district court that had not been raised in his or her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp.*, 197 F.3 894, 898 (7th Cir. 1999). To meet this standard, the EEOC charge and the complaint "must, at a minimum, describe the same conduct and implicate the same individuals." *Gawley v. Indiana Univ.*, 276 F.3d 301, 313 (7th Cir. 2001).

In his 2022 Charge, Nelson checked only the box for discrimination based on disability (Filing No. 46-3 at 134). The 2022 Charge states:

> Plaintiff began working for the Defendant in 2017. Plaintiff performed his job well. Plaintiff's current position is a starch operator. Plaintiff is a qualified individual with a disability approved for intermittent FMLA to cover episodic issues associated with his disability.
>
> In July 2021, Plaintiff returned to work. When Plaintiff returned to work he was constantly harassed due to his disability. In August 2021, Plaintiff was constructively discharged.

Plaintiff was discriminated against in violation of the Americans with Disability Act.

(Filing No. 46-3 at 134).

Nelson's 2022 Charge makes no mention of any arguably protected activity or any alleged retaliation. Nelson does not even check the box for retaliation. *Id.* Nelson therefore did not assert an ADA retaliation claim in his 2022 Charge. An ADA retaliation claim also does not reasonably relate to the asserted discrimination charge. Ordinarily, "a retaliation charge [is not] reasonably related to a discrimination claim." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 565 (7th Cir. 2019). Nelson is therefore barred from asserting an ADA retaliation claim based on the events of May 2021, and summary judgment is **granted** as to all of Nelson's ADA claims.

### E.      FLSA Claims

Ingredion lastly argues that Nelson cannot sustain his FLSA claims. To assert a claim under the FLSA, a plaintiff must show that he performed work for which he was not properly compensated. *See Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016). Ingredion argues that Nelson cannot offer any evidence of time worked for which he was not paid, and it designates payroll records showing that Ingredion paid Nelson all wages to which he was entitled (Filing No. 45 at 43). In response, Nelson cites his own affidavit, which states that he worked on August 17, 18, and 19, 2021, but was not paid for the hours he worked those days (Filing No. 50 at 14; Filing No. 51-4 at ¶ 19). Ingredion replies by arguing that Nelson's affidavit is contradicted by Ingredion's payroll records, which show that Nelson did not work those days, so Ingredion is entitled to summary judgment (Filing No. 54 at 18).

Ingredion effectively argues that Nelson's affidavit is contradicted by more credible evidence—Ingredion's payroll records—so the Court should accept Ingredion's version of events. However, "[o]n summary judgment a court may not make credibility determinations, weigh the

evidence, or decide which inferences to draw from these facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (declining to weigh credibility of plaintiff's deposition testimony, despite plaintiff "making [the] task of suspending credibility determinations difficult by lodging some fairly outrageous accusations" that were later recanted or "belied" by police dispatch records). The Court also may not discount self-serving affidavits simply because they are self-serving. "Absent a finding . . . that the usual requirements for evidence at the summary judgment stage were not met, evidence presented in a 'self-serving' affidavit or deposition is enough to thwart a summary judgment motion." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 175 (7th Cir. 2011) (stating district court erred by finding plaintiff "offer[ed] no evidence other than her own testimony to support her argument" (alteration in original).

Nelson's affidavit is sufficient to create a genuine dispute of material fact as to whether, and how long, Nelson worked on August 17, 18, and 19, 2021. Summary judgment is therefore **denied** as to Nelson's FLSA claim regarding his hours worked on August 17, 18, and 19, 2021. Summary judgment is **granted** as to all remaining FLSA claims.

## IV.   CONCLUSION

For the reasons explained above, the Court **GRANTS** Ingredion's Motion to Strike (Filing No. 56) and **GRANTS in part** and **DENIES in part** Ingredion's Motion for Summary Judgment (Filing No. 44). Nelson's Surreply (Filing No. 55) is **STRICKEN** from the summary judgment record.

Ingredion's Motion for Summary Judgment is **denied** only as to Nelson's FMLA interference and retaliation claims related to his May 2021 request for FMLA leave, request for an FMLA Packet, and May 2021 Suspension; and as to Nelson's FLSA claim related to hours worked on August 17, 18, and 19, 2021. Only those claims shall proceed to trial. The Motion for Summary Judgment is **granted** as to all of Nelson's remaining claims, and those claims are **dismissed with prejudice**.

20

**SO ORDERED**.

Date:    8/31/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Amber K. Boyd
Amber K. Boyd Law
amber@amberboydlaw.com

Katherine M. Gordon
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
katherine.gordon@faegredrinker.com

Tracey Salmon-Smith
Faegre Drinker Biddle & Reath LLP
tracey.salmonsmith@faegredrinker.com